# In the United States Court of Federal Claims

|  |  |
|---|---|
| DEE MONBO, | |
|              Plaintiff, | |
|              v. | No. 25-325C |
| THE UNITED STATES, | Filed June 10, 2025 |
|              Defendant. | |

Dee Monbo, Owings Mills, MD, pro se.

Kelly Palamar, Civil Division, United States Department of Justice, Washington, DC, for defendant.

### OPINION AND ORDER
### Dismissing for Lack of Jurisdiction and Issuing a Pre-Filing Restriction

Dee Monbo, proceeding without an attorney, filed a bid protest in this court. Ms. Monbo has recently filed other bid protests in this court. In one of those other cases, another judge of this court held that, because Ms. Monbo was debarred from bidding on federal contracts, she lacked standing to file a bid protest, meaning that this court did not have jurisdiction over her complaint. Because Ms. Monbo remains debarred, the court still does not have subject-matter jurisdiction over her new bid protest. The court's decision in Ms. Monbo's earlier bid protest also, separately, precludes Ms. Monbo's new complaint. The court will therefore dismiss Ms. Monbo's complaint for lack of subject-matter jurisdiction and, in the alternative, for failure to state a claim.

Ms. Monbo has also filed dozens of cases across the federal court system, many of them repetitive, some of them frivolous, and none of them meritorious. Given Ms. Monbo's history of repetitive litigation and her failure to explain, in response to this court's show-cause order, any valid reason for filing so many cases that are repetitive and meritless, the court will also impose a

pre-filing restriction that requires her to request and obtain permission from the chief judge of this court before filing any complaint pro se in this court.

## I.    Background

On February 20, 2025, Ms. Monbo filed a complaint in this court protesting the General Services Administration's alleged solicitation number FA301625Q0007 as unlawful and unduly restrictive and alleging that both she, as a sole proprietor, and her company, Monbo Group International, Ltd. (MGI), are therefore unable to compete for work. *See* ECF No. 1.

Earlier, in September 2024, Ms. Monbo filed a different bid protest, also on behalf of herself and MGI. A different judge of this court issued a decision dismissing that complaint on February 20, 2025, the same day she filed this suit. *See Monbo v. United States*, 175 Fed. Cl. 440 (2025) ("*Monbo I*"). In *Monbo I*, Ms. Monbo protested a solicitation by a different federal agency. *Id.* at 447. The court determined that, because both Ms. Monbo and MGI are debarred from federal contracting, and neither can bid for or receive a federal government contract, neither could establish an injury, based on the terms of a solicitation, that could be redressed by a favorable court decision. The court held that both entities thus lacked standing to bring a complaint in this court. *Monbo I*, 175 Fed. Cl at 456-59. The court also held that, for the same reason, each of Ms. Monbo and MGI failed to allege a direct economic interest that would be affected by the award of the contract, and therefore neither could be an "interested party" as required by the Tucker Act. *Id.* at 457, 458-60 (citing 28 U.S.C. § 1491(b)(1)). The court therefore dismissed Ms. Monbo's complaint for lack of standing and for failure to state a claim. Both Ms. Monbo and MGI are still debarred from federal contracting, and their debarment currently lasts until 2026.[1]

---

[1]  *See Exclusion: Monbo Group International, Ltd*, SAM.GOV, https://sam.gov/exclusions-new?pirKey=522012&pirValue=1701262016960930; *Exclusion: Monbo Dee*, SAM.GOV, https://sam.gov/exclusions-new?pirKey=523071&pirValue=1701270467702707; *Exclusion: Dee Monbo*,          SAM.GOV,          https://sam.gov/exclusions-new?pirKey=522051&pirValue=

Beyond this case and *Monbo I*, Ms. Monbo has an extensive litigation history. In the last seven years, Ms. Monbo has filed at least nine cases in this court, fifteen in the District of DC, ten in the District of Maryland, three in the District of Connecticut, one in the Eastern District of New York, and one in the Eastern District of Virginia. Of those thirty-nine federal cases, at least ten have been dismissed for a lack of jurisdiction. *See Monbo I*, 175 Fed. Cl. 440; *Monbo v. Small Business Administration*, No. 24-1872, ECF No. 28 (D.D.C. Dec. 10, 2024); *Monbo v. Richmond American Homes of Maryland, Inc.*, No. 24-0186, ECF No. 37 at 2 (D.D.C. May 9, 2024); *Monbo v. Court of Special Appeals of Maryland*, No. 23-2205, ECF No. 15 (D.D.C. Dec. 12, 2023); *Monbo v. United States*, No. 23-2425, ECF No. 24 (D.D.C Dec. 1, 2023); *Monbo v. Upper Chesapeake Medical Center, Inc.*, No. 23-2471, ECF No. 61 at 1 (D.D.C. June 27, 2024); *Monbo v. Upper Chesapeake Medical Center, Inc.*, No. 20-3403, ECF No. 4 at 2-3 (D. Md. Dec. 2, 2020); *Monbo v. Upper Chesapeake Medical Center, Inc.*, No. 21-0004, ECF No. 40 (D. Md. Aug. 23, 2021); *Monbo v. Leaming,* No. 21-1996. ECF No. 5 at 2-3 (D. Md. Aug. 26, 2021); *Monbo v. Evans*, No. 22-1171, ECF No. 27 at 4 (D. Md. Dec. 7, 2022), *aff'd*, No. 23-1010 (4th Cir. May 23, 2023).

On March 12, 2025, the court ordered Ms. Monbo to show cause for why, given her ongoing debarment, (1) she has standing to file a bid protest in this court, (2) this court has subject-matter jurisdiction, and (3) the court's February 20 decision in *Monbo I* does not preclude Ms. Monbo from raising the issues she raises in her complaint. ECF No. 10 at 6. The court also directed Ms. Monbo to show cause for why her pattern of litigation in this court and other federal courts should not result in a pre-filing restriction that requires her to request and receive permission from

---

1701270412896524; *Exclusion: Deafueh Monbo*, SAM.GOV, https://sam.gov/exclusions-new?pirKey=522011&pirValue=1701261943056040 (all last visited June 5, 2025; all cited at *Monbo I*, 175 Fed. Cl. at 447-48 nn.3-6).

the chief judge of this court before filing any complaint pro se in this court. *Id.* In response, before the deadline the court gave to respond, Ms. Monbo filed a document titled "notice of appeal." ECF No. 11. Although it is titled "notice of appeal," there is no final decision in this case to appeal, and in the document Ms. Monbo does not note an intent to appeal but instead substantively addresses the court's show-cause order. Ms. Monbo accuses the government of "overr[iding] the power of the Court of Federal Claims and w[riting] a Show Cause Order … on behalf of itself" and "typ[ing] the name of 'Judge Molly R. Silfen' on the Order to make it appear that Judge [Silfen] had written the Show Cause Order when … [she had] not written such an Order." *Id.* at 1. She also argues that the court is precluded from issuing a pre-filing injunction by a decision in the DC district court and asks the court to transfer her case to the DC district court if this court "chooses not to decide the controversy." *Id.* at 6-7. The government responds, arguing that Ms. Monbo lacks standing; this court lacks subject-matter jurisdiction; *Monbo I* precludes her from filing another bid protest; and the government does not oppose the issuance of a pre-filing injunction. ECF No. 12 at 3-7.

## II.    Discussion

To establish Article III standing, a plaintiff must (1) have suffered an injury in fact that is concrete and particularized; (2) establish a causal connection between the injury and the conduct complained of; and (3) show that it is likely that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Although this court is not an Article III court, a plaintiff must establish Article III standing in this court, as in Article III courts. *Starr International Co. Inc. v. United States*, 856 F.3d 953, 964 (Fed. Cir. 2017) ("The Claims Court, though an Article I court, applies the same standing requirements enforced by other federal courts created under Article III." (citation omitted)). The Supreme Court has explained that in contract cases a plaintiff must demonstrate that "[she] is able and ready to bid on contracts." *Northeastern Florida Chapter of Associated General Contractors of America v. City of Jacksonville,*

508 U.S. 656, 666 (1993). If a plaintiff cannot show an ability to bid, she cannot show an injury in fact.

To establish subject-matter jurisdiction over a bid protest, a plaintiff must likewise show that she "(1) is an actual or prospective bidder and (2) has a direct economic interest in the procurement or proposed procurement." *Diaz v. United States*, 853 F.3d 1355, 1358 (Fed. Cir. 2012) (cleaned up); *see* 28 U.S.C. § 1491(b)(1). A "plaintiff bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence." *Estes Express Lines v. United States*, 739 F.3d 689, 692 (Fed. Cir. 2014).

This court has traditionally held the pleadings of a pro se plaintiff to a less stringent standard than those of a litigant represented by counsel. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (stating that pro se complaints "however inartfully pleaded are held to less stringent standards than formal pleadings drafted by lawyers" (marks omitted)). The court has therefore exercised its discretion in this case to examine the pleadings "to see if [the pro se] plaintiff has a cause of action somewhere displayed." *Ruderer v. United States*, 188 Ct. Cl. 456, 468 (1969). Regardless, pro se plaintiffs still have the burden of establishing the court's jurisdiction by a preponderance of the evidence. *See Landreth v. United States*, 797 F. App'x 521, 523 (Fed. Cir. 2020) (citing *Kelley v. Secretary of the Department of Labor*, 812 F.2d 1378, 1380 (Fed. Cir. 1987)).

Under this court's rule 12(h)(3), the court must dismiss an action if it "determines at any time that it lacks subject-matter jurisdiction." Rules of the Court of Federal Claims (RCFC), Rule 12(h)(3); *see also Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94 (1998) ("Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." (quotation marks omitted)). Therefore, even if not disputed by a party, the court may challenge subject-matter jurisdiction sua sponte.

*Folden v. United States*, 379 F.3d 1344, 1354 (Fed. Cir. 2004).

"Under the judicially developed doctrine of collateral estoppel [or issue preclusion], once a court has decided an issue of fact or law necessary to its judgment, that decision is conclusive in a subsequent suit based on a different cause of action involving a party to the prior litigation." *United States v, Mendoza*, 464 U.S. 154, 158 (1984). Issue preclusion "protects the finality of judgments by precluding relitigation in a second suit of claims actually litigated and determined in the first suit." *Laguna Hermosa Corp. v. United States*, 671 F.3d 1284, 1287 (Fed. Cir. 2012) (cleaned up).

"Federal courts have inherent power to sanction bad-faith conduct, including vexatious litigation." *Allen v. United States*, 88 F.4th 983, 987 (Fed. Cir. 2023); *see Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991). This court may impose sanctions after providing the affected party with notice and an opportunity to be heard. *See Allen*, 88 F.4th at 987-89.

## A.    This court will address the issues before it even though Ms. Monbo has filed a document titled a "notice of appeal"

Under rule 3(d) of the Federal Rules of Appellate Procedure, this court "must serve notice of the filing of a notice of appeal." When Ms. Monbo filed a document titled "notice of appeal," this court forwarded it to the court of appeals, which docketed an appeal. Docket Entry of March 31, 2025; *Monbo v. United States*, No. 25-1608 (Fed. Cir., docketed Mar. 31, 2025). But this court is not required to stay the proceedings. Although "[o]rdinarily, the act of filing a notice of appeal confers jurisdiction on an appellate court and divests the trial court of jurisdiction[,] … a defective notice of appeal does not become effective to deprive the trial court of jurisdiction simply because the appellate court dockets the appeal." *Gilda Industries, Inc. v. United States*, 511 F.3d 1348, 1350-51 (Fed. Cir. 2008). Because Ms. Monbo's notice of appeal is apparently intended to be a

response to the show-cause order and actually responds to the court's show-cause order, and be-cause it would otherwise be an appeal of a non-appealable interim order, jurisdiction never trans-ferred from this court to the Federal Circuit. *Id.* ("[W]here the deficiency in a notice of appeal, by … reference to a non-appealable order, is clear to the district court, it may disregard the purported notice of appeal and proceed with the case, knowing that it has not been deprived of jurisdiction." (citation omitted)). This court will therefore proceed to address Ms. Monbo's complaint and the responses to the court's show-cause order, which contain issues that are fully briefed and ripe for adjudication.

> **B.     This court does not have subject-matter jurisdiction to review Ms. Monbo's complaint, and the court's decision in *Monbo I* precludes her current claims**

In *Monbo I*, the court noted that Ms. Monbo and MGI are debarred from federal contract-ing. *Monbo I*, 175 Fed. Cl. at 447-48 & nn.3-6, 457. That has not changed; both Ms. Monbo and MGI are currently debarred from federal contracting, and their debarment lasts until 2026. *Supra* Part I n.1. The court in *Monbo I* held that, because of that debarment, Ms. Monbo and MGI had "no chance at all of winning the contract if it were re-bid because [they] are debarred from federal contracting." *Monbo I*, 175 Fed. Cl. at 459 (cleaned up). Ms. Monbo could not establish that she had a direct economic interest in the particular procurement in that case, meaning she did not have standing, and the court did not have jurisdiction. *Id.*; *Diaz*, 853 F.3d at 1358; 28 U.S.C. § 1291(b)(1). For the same reason, Ms. Monbo lacks Article III standing to bring her claims this time. Because she has been debarred, she cannot bid on government contracts, so any injury to her cannot "be redressed by a favorable decision" involving the particular procurement in this case (*Lujan*, 504 U.S. at 560-61), and she has not "demonstrated that [she] is able and ready to bid on contracts" (*General Contractors of America*, 508 U.S. at 666). In her response to the court's show-cause order, Ms. Monbo does not provide any information indicating that her circumstances have

changed since *Monbo I. See generally* ECF No. 11. And, as the government points out, Ms. Monbo did not even try to bid on the government contract at issue here. ECF No. 12 at 4. Thus, the court remains jurisdictionally barred from reviewing Ms. Monbo's claims.

Ms. Monbo argues that a DC district court judge previously determined that this court would have jurisdiction over her bid protests, so this court must have jurisdiction. ECF No. 11 at 2; *see id.* at 3-4. That DC district court decision explained that "the Court of Federal Claims has exclusive jurisdiction to hear claims brought by an 'interested party' challenging a federal agency's solicitation." *Monbo v. United States*, No. 23-2425, 2023 WL 8354885, at *2 (D.D.C. Dec. 1, 2023) (citation omitted). The district court added that Ms. Monbo's claims were "within the exclusive jurisdiction of the Court of Federal Claims." *Id.* The court concluded "that if [Ms.] Monbo's suit belongs in any federal court, it belongs in the Court of Federal Claims." *Id.* at *3. But that decision itself explained not that this court necessarily has jurisdiction, but that if a party is an "interested party," this court would be the only court that could exercise jurisdiction. *Id.* at *2. Thus, the district court's decision does not require this court to exercise jurisdiction where the party is not an "interested party," as here.

In the alternative, *Monbo I* has preclusive effect over Ms. Monbo's current claims. "[O]nce a court has decided an issue of fact or law necessary to its judgment, that decision is conclusive in a subsequent suit based on a different cause of action involving a party to the prior litigation." *Mendoza*, 464 U.S. at 158. As discussed, the court in *Monbo I* already found that Ms. Monbo and MGI are debarred from federal contracting; it thus held that it did not have jurisdiction to review Ms. Monbo's claims and that she failed to state a claim under RCFC 12(b)(6). *Monbo I*, 175 Fed. Cl. at 457-59. The issues decided in *Monbo I* and here are the same, involving Ms. Monbo's and MGI's ability to protest federal government contracts when they cannot bid on those contracts; the

parties are the same; Ms. Monbo had a full and fair opportunity to litigate, and actually litigated, the issue in *Monbo I*; and the court has already decided the issue. *See B&B Hardware, Inc. v. Hargis Industries, Inc.*, 575 U.S. 138, 148 (2015). Thus, issue preclusion prevents Ms. Monbo and MGI from relitigating that issue, and Ms. Monbo fails to state a claim for relief here.

Ms. Monbo filed this suit on the same day the court dismissed *Monbo I*. But even if the court had issued its judgment in *Monbo I* after Ms. Monbo filed her new complaint, the earlier decision still has preclusive effect. *MaxLinear, Inc. v. CF CRESPE LLC*, 880 F.3d 1373, 1376 (Fed. Cir. 2018) ("[I]ssue preclusion applies even [when] the precluding judgment comes into existence while the case" is pending. (cleaned up)).

In sum, the court concludes that Ms. Monbo lacks standing; the court does not have subject-matter jurisdiction over her case; and issue preclusion prevents her from raising an argument about a procurement when the court already decided that her debarment prohibits her from raising that argument.

Ms. Monbo argues that this court cannot raise an issue—like the ones addressed here, which were first raised in the court's show-cause order—when no party raised it in the first instance. ECF No. 11 at 7. She asserts that, by ordering her to explain why the court has jurisdiction and can decide this case, the court has taken on the role of an advocate on behalf of the government rather than maintaining a neutral position. *Id.* But the court *must* satisfy itself of its own jurisdiction before addressing the merits of a case, even if that means raising a jurisdictional issue sua sponte. *Folden*, 379 F.3d at 1354. And for non-jurisdictional issues, the court has an important role to play in asking the parties questions, even questions that are not raised by a party. *See Day v. McDonough*, 547 U.S. 198, 209-11 (2006) (explaining that a court may sua sponte raise a non-jurisdictional issue as long as the court gives the parties notice and an opportunity to present their

positions); *Housing Authority of City of Slidell v. United States*, 149 Fed. Cl. 692, 700 (2020) (explaining that the court can order the parties to submit additional briefing on an issue to aid it in its decision-making). The court, by issuing the show-cause order and addressing the parties' arguments, has given the parties notice of the issues and an opportunity to respond. Thus, the court concludes that the decision to raise an issue in the first instance does not interfere with the court's role as neutral arbiter and is instead integral to that role.

C.    **The court will deny Ms. Monbo's alternative transfer request.**

Ms. Monbo requests that, rather than dismissing the case, the court transfer the case to the DC district court. ECF No. 11 at 7. The district court has already determined that it does not have jurisdiction over bid protests, in a case filed there by Ms. Monbo, so transfer would be inappropriate. *Monbo*, No. 23-2425, 2023 WL 8354885, at *2 (holding that the DC district court "lacks jurisdiction to hear" Ms. Monbo's bid protest claims). Further, the jurisdictional problem this court has addressed—that Ms. Monbo's debarment from government contracting means she cannot allege an injury based on an error in a procurement—would not be different in a different court. The court cannot transfer a case to a court that clearly also lacks jurisdiction. *See Rick's Mushroom Service, Inc. v. United States*, 521 F.3d 1338, 1347 (Fed. Cir. 2008) (explaining that the "plain language of [28 U.S.C. § 1631] requires that the transferee court have jurisdiction over the claim").

D.    **Ms. Monbo must request and receive permission from this court's chief judge to file another pro se complaint in this court**

As discussed above, Ms. Monbo has an extensive litigation history. *See supra* Part I. One court described Ms. Monbo as "a serial litigant who has filed many suits in [DC district] court and has recently been declared a vexatious litigant in Maryland state court." *Monbo v. Richmond Homes of Maryland, Inc.*, No. 24-186, ECF No. 37 (D.D.C. May 9, 2024). Another court noted that Ms. Monbo filed "five lawsuits based on the same underlying facts," stating that that was

"certainly excessive." *Monbo v. Upper Chesapeake Medical Center, Inc.*, No. 23-2471, ECF No. 62 (D.D.C. June 27, 2024).

Others of Ms. Monbo's cases have been dismissed for improper litigation behavior, such as failing to comply with court orders. *See, e.g.*, *Monbo v. Leaming*, No. 22-2284 (D. Md. Sept. 9, 2022); *Monbo v. United States*, No. 24-2083 (Fed. Cl. Dec. 18, 2024); *Monbo v. United States*, No. 24-89 (Fed. Cl. June 4, 2024) (dismissed for failure to state a claim and, pursuant to RCFC 41(b), for violating RCFC 83.1(a)(3)). In one case, the court ordered her to show cause as to why her complaint should not be dismissed without prejudice given her filing history. *Monbo v. Leaming*, No. 22-2284, ECF No. 7 (D. Md. Nov. 8, 2022). Instead of responding, Ms. Monbo filed a motion seeking the judge's recusal and, on the same day, informed the court that she had sued the court and the judge in her personal and professional capacity in Maryland state court. No. 22-2284, ECF Nos. 8, 9 (D. Md. Dec. 8, 2022). Both suits went nowhere. No. 22-2284, ECF No. 10 (D. Md. June 20, 2023); *Monbo v. U.S. District Court for the Dist. of Maryland*, No. 22-4927 (Balt. Cnty. Cir. Ct. Dec. 6, 2022).

In this court, a judge ordered Ms. Monbo to explain why she did not appear for a scheduled status conference and told her that, if she did not respond, her complaint would be dismissed for failure to prosecute. *Monbo v. United States*, No. 24-2083, ECF No. 17 (Fed. Cl. Jan. 15, 2025). Ms. Monbo did not respond, and the court dismissed Ms. Monbo's complaint under this court's rule 41(b), stating, "Plaintiff's (1) failure to comply with this Court's … order to file a Joint Status Report in cooperation with opposing counsel; (2) failure to appear at the … Status Conference; (3) failure to indicate a good faith basis for failing to appear for the … Status Conference in response to this Court's Show Cause Order; and (4) failure to appear for the [second] Status Conference demonstrate a pattern of willful noncompliance with this Court's Orders. This finding is supported

by Plaintiff's purposeful incommunicativeness with the Clerk of the Court, Court staff, and opposing counsel." *Monbo v. United States*, No. 24-2083, ECF No. 27 (Fed. Cl. Jan. 24, 2025).

Ms. Monbo has at times filed notices of voluntary dismissal, sometimes only a few days after filing a complaint. *See e.g. Monbo et al v. Caesar*, No. 21-2928 (D.D.C. Nov. 2, 2021); *Monbo v. Leaming*, No. 21-1984 (D. Md. Aug. 5, 2021); *Monbo v. Brodie*, No. 23-316 (D. Md. Feb. 4, 2023); *see also Monbo v. United States*, No. 23-0788 (Fed. Cl. May 31, 2023) (voluntarily dismissing on the same day the court issued an order referring her, with her consent, to the court's pro bono program to help her find an attorney). Ms. Monbo has appealed many decisions to the Federal Circuit, the Fourth Circuit, the Second Circuit, and the DC Circuit; each court of appeals has either dismissed because it was an improper appeal, dismissed for failure to prosecute, or affirmed the trial court's decision.

In its show-cause order, this court gave Ms. Monbo notice that it was considering an anti-filing restriction and provided an opportunity to respond. ECF No. 10 at 3-6; *See Allen*, 88 F.4th at 987-89. In her response, Ms. Monbo did not address any of the court's concerns. Instead, she accused the government of pretending to be the court and filing the show-cause order itself, argued that the court is precluded from issuing an anti-filing injunction, and said that if the court did issue the order, it was acting as an advocate for the government. ECF No. 11 at 1, 6-7.

The show cause-order was issued by the court. As already discussed, the court can raise an issue that it deems important and ask the parties to brief it; that is not taking on the role of advocate. Federal courts have the power to sanction bad-faith conduct, including addressing serial and vexatious litigators. *See Chambers*, 501 U.S. at 46; *Allen*, 88 F.4th at 987-89.

This court is also not precluded by a DC district court's determination in another case of Ms. Monbo's that it would not issue a pre-filing injunction. *See Monbo v. Upper Chesapeake*

*Medical Center, Inc.*, No. 23-2471, 2024 WL 3202221 at \*9 (D.D.C. June 27, 2024) (citing *Klayman v. Porter*, No. 22-7123, 2024 WL 2926826 at \*5 (D.C. Cir. June 11, 2024)). In that case, the district court only noted that Ms. Monbo had filed "five lawsuits based on the same underlying facts." *Id.* That is different from the thirty-nine lawsuits Ms. Monbo has now filed across federal courts. And the pre-filing restriction this court imposes is a much less restrictive measure than the DC district court contemplated; there, Ms. Monbo would have been prohibited from filing suit at all, in any district, against the same defendant. *Id.* The DC district court's decision, based on different facts, does not preclude this court from coming to its own conclusion on the facts now at issue here. *See Montana v. United States*, 440 U.S. 147, 155 (1979) (When determining whether application of collateral estoppel is appropriate, the courts consider "whether controlling facts … have changed significantly since the [earlier] judgment.").

Ms. Monbo has not explained or justified her pattern of litigation; the court will restrict Ms. Monbo's ability to file future pro se complaints in this court.

## III.    Conclusion

For the reasons stated above, this court **dismisses** Ms. Monbo's complaint, **denies** her alternative request to transfer the complaint, and **restricts** Ms. Monbo from filing complaints pro se in this court without first requesting and receiving leave from the chief judge.

If Ms. Monbo wishes to file a new complaint pro se in this court, she shall submit a motion for leave to file and explain why her new complaint is timely and is properly before this court. Her motion must attach a complaint that meets the requirements of RCFC 8. Ms. Monbo is free to file a complaint in the future without requesting leave if the complaint is signed and filed by an attorney who is licensed, is authorized to practice law in at least one state or territory of the United States or the District of Columbia, and is a member in good standing of this court's bar.

The clerk of the court shall enter judgment accordingly.

**IT IS SO ORDERED.**

/s/ Molly R. Silfen
MOLLY R. SILFEN
Judge